UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**JENNIFER LYNN TIPTON**,

Debtor.

Case No. **12-60158-13**

# MEMORANDUM of DECISION

At Butte in said District this 11th day of January, 2013.

In this Chapter 13 bankruptcy, the Debtor filed on August 24, 2012, an Objection to Proof of Claim No. 8 filed by Residential Credit Solutions, Inc. arguing:

> Claimant asserts a secured claim and security interest via a note and deed of trust, entered into between Debtor and the original creditor, American Brokers Conduit. However, the proof of claim offers no explanation of how Claimant became the current claimant, nor any documentation of chain of title. Accordingly, Claimant has attached no evidence that Claimant is the true party in interest, or that Claimant holds a perfected security interest in the claimed collateral, as is required by Mont. LBR 3001.

At a hearing held October 30, 2012, Erika R. Peterman ("Peterman") of Missoula, Montana appeared on behalf of JPMorgan Mortgage Acquisition Corp., through its servicing agent Residential Credit Solutions, Inc. ("RCS"), and requested a briefing schedule on the purely legal issue of whether a note endorsed in blank is valid support for a proof of claim. In response to the representation by Debtor's counsel that RCS's Proof of Claim was filed without any supporting documentation, Peterman requested time for RCS to provide the necessary documentation to

support its Proof of Claim No. 8.  The Court, instead of establishing a briefing schedules, granted Peterman's request for more time and continued the hearing on Debtor's Objection to November 20, 2012.

Thereafter, on November 15, 2012, Peterman filed a Request for Briefing Schedule arguing that despite the representations made by Debtor's counsel, RCS had filed documentation with Proof of Claim No. 8 that supported its claim against Debtor.  The Court granted RCS's request for a briefing schedule.  The parties have filed their briefs and the matter is now ready for decision.

BACKGROUND

Debtor filed her Chapter 13 bankruptcy petition on February 9, 2012.  On Schedule A, Debtor lists her home and discloses that the home is security for a debt in the amount of $105,834.00.  On Schedule D, Debtor lists RCS as having a secured claim in the amount of $105,834.00, and further discloses that RCS's claim is secured by Debtor's home.  Debtor does not list RCS's debt as disputed on Schedule D.

Debtor filed a Chapter 13 Plan on February 12, 2012, which Plan was, with the Trustee's consent, confirmed on April 3, 2012.  Debtor's confirmed Plan lists RCS as having an unimpaired secured claim and further provides that an arrearage owed to RCS in the amount of $18,709.22 will be paid through Debtor's Plan.

On June 21, 2012, the Trustee filed a motion to vacate the order confirming Debtor's Plan because RCS "filed a proof of claim claiming arrearages in an amount different than the

arrearages provided under the Plan."[1] RCS's Proof of Claim No. 8 filed June 4, 2012, asserts a total claim in the amount of $112,124.77, which includes an arrearage of $18,645.92. RCS's Proof of Claim No. 8 is accompanied by: (1) a Mortgage Proof of Claim Attachment; (2) RCS's Annual Escrow Account Disclosure Statement; (3) a copy of the January 3, 2007, Note between Debtor and American Brokers Conduit, which Note is endorsed in blank; and (4) the Deed of Trust. In addition, Peterman attached to her Brief in Support of Proof of Claim #8: (1) a letter dated July 12, 2011, from JPMorgan Chase Bank, N.A. to Debtor advising that the right to collect payments from Debtor was transferred from JPMorgan Chase Bank, N.A. to RCS; (2) a Notice of Assignment, Sale, or Transfer or Servicing Rights; (3) an Assignment of Deed of Trust; and (4) an Appointment of Successor Trustee.

## APPLICABLE LAW and DISCUSSION

Rule 3001(f), F.R.B.P., provides that a proof of claim completed and filed in accordance with 11 U.S.C. § 501 and any applicable Bankruptcy Rules constitutes *prima facie* evidence of the validity and amount of the claim. Thus, if a procedurally proper claim is filed, an objecting party carries the burden of going forward with evidence contesting the validity or amount of the claim. *In re Weber*, 16 Mont. B.R. 49, 56 (Bankr. D. Mont. 1997); *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991). Once an objecting party succeeds in overcoming the *prima facie* effect given to a claim by Rule 3001(f), the burden shifts to the claimant to prove the validity of its claim by a preponderance of the evidence. *In re Allegheny Int'l, Inc*. 954 F.2d 167, 173-74 (3rd Cir. 1992).

---

[1] The Trustee has one other reason for wanting to vacate the Order confirming Plan. However, the other reason set forth in the Trustee's motion has no bearing on RCS's Proof of Claim.

Montana LBR 3001-2 directs that "[a] proof of claim shall include those documents required by F.R.B.P. 3001(c) and (d); and an itemized summary of the account showing, as of the date of the commencement of the debtor's bankruptcy case, the unpaid principal balance, all accrued interest, forced-placed insurance, late charges, and other charges; the rate of contract or other interest; and the per diem interest accrual as of the date of the commencement of the case."

While acknowledging that RCS "attached to its Proof of Claim the note and deed of trust allegedly entered into between Debtor and the original lender[,]" Debtor argues Proof of Claim No. 8 does not comply with Rule 3001 and Mont. LBR 3001(c)(1) and should be disallowed because RCS did not provide copies of "the transfer document(s) which show chain of title and establish that the rights to said note and deed of trust have been transferred to [RCS]." Debtor's argument fails to consider applicable Montana law.

An instrument is defined as "a negotiable instrument." Mont. Code Ann. ("MCA") § 30-3-104(2). A "negotiable instrument" is defined as:

> an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>
> (a) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>
> (b) is payable on demand or at a definite time; and
>
> (c) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money except that the promise or order may contain:
>
> > (i) an undertaking or power to give, maintain, or protect collateral to secure payment;
> >
> > (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral; or

>     (iii) a waiver of the benefit of any law intended for the advantage or protection of any obligor.

MCA § 30-3-104(1). The Note attached to RCS's Proof of Claim No. 8 is a negotiable instrument.

An indorsement is a signature made on an instrument for the purpose of negotiating the instrument. MCA § 30-3-203. An indorsement in blank is an indorsement that is not payable to an identified person. MCA § 30-3-204. Thus, an instrument indorsed in blank becomes payable to bearer and any person who possesses the instrument becomes its holder. MCA § 30-3-204. A person is entitled to enforce an instrument if he, she or it is the holder of the instrument. MCA § 30-3-301.

In this case, the Note is endorsed in blank and Debtor has not presented any evidence to refute that RCS is the holder of the Note. However, even if RCS was not the holder of the Note, RCS could still be entitled to enforce the Note as "a nonholder in possession of the instrument who has the rights of a holder." *See* MCA § 30-3-301. As explained in *In re Veal*, 450 B.R. 897, 910-13 (9th Cir. BAP 2011),

> Contrary to popular opinion, these rules do not absolutely require physical possession of a negotiable instrument in order to enforce its terms. Rather, Article 3 states that the ability to enforce a particular note—a concept central to our standing inquiry—is held by the 'person entitled to enforce' the note. UCC § 3–301.
>
> * * *
>
> [T]he maker should be indifferent as to who owns or has an interest in the note so long as it does not affect the maker's ability to make payments on the note. Or, to put this statement in the context of this case, the Veals should not care who actually owns the Note—and it is thus irrelevant whether the Note has been fractionalized or securitized—so long as they do know who they should pay. Returning to the patois of Article 3, so long as they know the identity of the

"person entitled to enforce" the Note, the Veals should be content.

RCS was not the initial payee of the Note. Thus, RCS is required to demonstrate facts sufficient to show that it is a "person entitled to enforce" the Note, or is the agent of such a person. American Brokers Conduit was the original payee of the Note and Mortgage Electronic Registration Systems, Inc. ("MERS"), solely as nominee for American Brokers Conduit, was the original beneficiary under the Deed of Trust. By letter dated July 12, 2011, Debtor was advised by JPMorgan Chase Bank, N.A. that the right to collect payments from Debtor was being transferred to RCS on August 1, 2011. Sometime prior to August 1, 2011, Debtor was again advised by a "Notice of Assignment, Sale, or Transfer of Servicing Rights" that RCS would be servicing Debtor's loan and that payments and correspondence were to be directed to RCS. On September 13, 2011, MERS granted, conveyed, assigned and transferred its beneficial interest in the Deed of Trust to JPMorgan Mortgage Acquisition Corp., whose address was "c/o Residential Credit Solutions, Inc." On September 28, 2011, JPMorgan Mortgage Acquisition Corp., by RCS, its attorney in fact, appointed First American Title Insurance Company as the successor trustee under the Deed of Trust.

Based upon the facts before the Court, Debtor offers no evidence to refute that RCS is the holder of the Note and MCA § 30-3-301 allows the holder of a note to enforce the note. Moreover, under MCA § 71-1-110 the "assignment of a debt secured by mortgage carries with it the security,"[2] and pursuant to MCA § 71-1-305, mortgage law applies to trust indentures.[3]

---

[2] *See First Nat'l Bank of Saco v. Vagg*, 65 Mont. 34, 212 P. 509, 510-11 (Mont. 1922).

[3] MCA § 71-1-305 provides: "A trust indenture is deemed to be a mortgage on real property and is subject to all laws relating to mortgages on real property except to the extent that such laws are inconsistent with the provisions of this part, in which event the provisions of this

For the reasons discussed above, the Court finds that Debtor has not overcome the *prima facie* effect given to RCS's Proof of Claim No. 8. Therefore, the Court will enter a separate order providing as follows:

IT IS ORDERED that Debtor's Objection to Proof of Claim No. 8 filed by Residential Credit Solutions, Inc. is OVERRULED; and Proof of Claim No. 8 shall be allowed as filed.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

---

part shall control. For the purpose of applying the mortgage laws, the grantor in a trust indenture is deemed the mortgagor and the beneficiary is deemed the mortgagee."